Linda STROMWALL, Ken Sauer, Don McIntosh, and
Wilma McIntosh *v.* CITY of SPRINGDALE
PLANNING COMMISSION

01–1324                                          86 S.W.3d 844

Supreme Court of Arkansas
Opinion delivered October 10, 2002

*The Evans Law Firm, P.A.*, by: *Karen Pope Greenaway*, for appellants.

*Ernest B. Cate*, Deputy City Attorney, for appellee.

DONALD L. CORBIN, Justice. Appellants Linda Strom-wall, Ken Sauer, Don McIntosh, and Wilma McIntosh appeal the order of the Washington County Circuit Court dismissing their appeal of the April 3, 2001, action by Appellee City of Springdale Planning Commission. The trial court found that Appellants lacked standing to appeal the Commission's action. This case was certified to us from the Arkansas Court of Appeals pursuant to Ark. Sup. Ct. R. 1-2(d). For the reasons set out below, we dismiss the appeal because the Commission's action was not final.

The record reflects that on April 3, 2001, Appellee City of Springdale Planning Commission approved a large scale development and preliminary plat on a proposed mobile-home park called "The Commons." The meeting was open to the public. During the meeting, the Commission heard comments and made motions regarding particular details of the development. The record does not contain any formal order reflecting what action the Commission took during that meeting; however, the record contains a certified copy of the minutes of the meeting. Those minutes reflect that the Commission discussed various aspects of the development, including the width of the streets; whether the streets would be private or public; the width and location of a sidewalk; the number of single and double-wide units; and the distance between the mobile homes. Following the discussion on each particular item, motions were made to adopt the developer's proposal, and the motions were seconded. Each of the motions were then put to a vote of the members, and each motion was approved. At the conclusion of the meeting, member Bob Collins moved to approve the large scale development subject to staff recommenda-

tion. Collins's motion was seconded and approved by a majority of the members, with one member abstaining.

■ Appellants brought their appeal pursuant to Ark. Code Ann. § 14-56-425 (Repl. 1998), which provides:

> In addition to any remedy provided by law, appeals from *final action* taken by the administrative and quasi-judicial agencies concerned in the administration of this subchapter may be taken to the circuit court of the appropriate county where they shall be tried de novo according to the same procedure which applies to appeals in civil actions from decisions of inferior courts, including the right of trial by jury. [Emphasis added.]

Under this section, only final actions taken by a planning commission are appealable. Thus, as a threshold matter, we must determine whether the action taken by the Commission on April 3, 2001, is a final action subject to appeal. Although neither side has raised this issue, we must raise it on our own because it concerns the circuit court's jurisdiction to hear the case and, in turn, our jurisdiction. *See, e.g., Harold Ives Trucking Co. v. Pro Transp., Inc.*, 341 Ark. 735, 19 S.W.3d 600 (2000) (*per curiam*); *Barclay v. Farm Credit Servs.*, 340 Ark. 65, 8 S.W.3d 517 (2000).

■ Section 14-56-425 does not define the term "final action." However, this court has previously addressed that term in the context of a civil-rights claim. In *Ford v. Arkansas Game & Fish Comm'n*, 335 Ark. 245, 979 S.W.2d 897 (1998), this court held that the appellant's claim was not ripe because the commission had not taken any final action regarding his hunting and fishing licenses. This court relied on the Supreme Court's discussion of final administrative action in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). There, the Court wrote that "the finality requirement is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury[.]" *Ford*, 335 Ark. at 253, 979 S.W.2d at 901 (quoting *Williamson*, 473 U.S. at 193).

■■ In other contexts, this court has held that the test of finality and appealability of an order is whether the order puts the court's directive into execution, ending the litigation or a separa-

ble branch of it. *Farm Bureau Mut. Ins. Co. v. Running M Farms, Inc.*, 348 Ark. 313, 72 S.W.3d 502 (2002). Thus, for an order or action to be final, it must terminate the action, end the litigation, and conclude the parties' rights to the subject matter in controversy. *Id*; *Beverly Enters.-Ark., Inc. v. Hillier*, 341 Ark. 1, 14 S.W.3d 487 (2000). Where further proceedings are contemplated, which do not involve merely collateral matters, the order or action is not final. *Harold Ives Trucking Co.*, 341 Ark. 735, 19 S.W.3d 600. Based on these principles of finality, we conclude that the action taken by the Commission was not a final action subject to appeal under section 14-56-425.

During the April 3, 2001, meeting, several comments were made by Planning Director Patsy Christie indicating that the Commission's actions had yet to become final or adopted as to the proposed development. The minutes of the meeting reflect the following discussions:

> PATSY CHRISTIE: Ok, so your proposing that you would make part of this development plan that that agreement with the police department would be in place for assistance in regulating parking on streets. That is gona [*sic*] be part of your agreement? . . .

> LYNN WILLIAMSON: This is written into the draft of our agreement of our agreements.

> PATSY CHRISTIE: Ok, *and that would be submitted to go in as the Final Development Plan*?

> LYNN WILLIAMSON: That's right.

> PATSY CHRISTIE: It would remain a private street. That's what they're proposing and that would be a means of addressing the parking problems and those kind of things.

> BOB COLLINS: I think I would feel better if we had a Bill of Assurance or a bond that their gona [*sic*] perform their duty.

> PATSY CHRISTIE: Well, *when we adopt the Final Development Plan* with the plat it sets the conditions of what has to take place in this Planned Unit Development. . . .

> . . . .

> PATSY CHRISTIE: Ok, the next item is the model home temporary marketing office. *It's a little bit early to be dealing with that yet*

because they haven't even started the infrastructure, they'll come back with a Conditional Use request for a model home temporary marketing office when we get to that point and so that one just stays on the table.

. . . .

PATSY CHRISTIE: . . . Now the drainage issues still haven't been addressed. You haven't submitted a final drainage report?

LYNN WILLIAMSON: We have made the, we have made the corrections to allow the drainage, the final. . . .

PATSY CHRISTIE: You've put easements on there but you don't, the drainage hasn't been decided.

LYNN WILLIAMSON: We don't know what size they'll be.

PATSY CHRISTIE: And they would not get final plat approval until the drainage has been installed, designed and approved.

. . . .

PATSY CHRISTIE: . . .The street names, as we discussed yesterday, we need to revisit the issue of the street names and make sure we get approval by planning and police and fire and the postal service.

And then, the Final Plat has to be approved before you get any permits to set any manufactured homes out there.

LYNN WILLIAMSON: That's right.

PATSY CHRISTIE: I think that's everything on the list.

SECRETARY SCHNEIDER: Think that's everything?

PATSY CHRISTIE: Now we're gona [sic] take comments before we accept the whole thing. [Emphasis added.]

The secretary then asked if anyone present had any comments on the issue. There were none. At that point, Commission member Collins made "a motion to approve the Large Scale Development subject to staff recommendations." (Emphasis added.) That motion was seconded and approved by all but one of the Commission's members.

██    The foregoing record demonstrates, at a minimum, that the Commission did not believe that it was taking final action in

regard to plat approval for the development. The minutes reflect that further action in this matter is contemplated by the Commission, and that there are still outstanding issues to be determined before the developers receive final plat approval. Accordingly, the action taken by the Commission on April 3, 2001, is not a "final action" within the meaning of section 14-56-425. Were we to conclude otherwise, we would be effectively approving the piecemeal appeal of every preliminary or conditional decision made by a planning commission. This was clearly not the intent of the legislature when it provided for appeals only from a "final action" taken by administrative and quasi-judicial agencies. Because the Commission's ruling on April 3, 2001, was not a final action within the meaning of section 14-56-425, the circuit court lacked jurisdiction of the appeal and, consequently, this court lacks jurisdiction. We therefore dismiss the appeal.